Filed 7/22/25  P. v. Godoy CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JUSTIN AARON GODOY,<br><br>    Defendant and Appellant. | D083126, D083283<br><br><br>(Super. Ct. Nos. SCD296229, SCD299560) |

CONSOLIDATED APPEALS from judgments of the Superior Court of San Diego County, Jeffrey F. Fraser, Judge.  Affirmed as modified.

Steve S. Lubliner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Laura G. Baggett and Robin Urbanski, Deputy Attorneys General, for Plaintiff and Respondent.

In these consolidated appeals, Justin Aaron Godoy appeals from judgments imposed in two separate criminal cases, one for an incident when he threw a bottle at his roommate's head and another for an incident when

he threw a rock at an eight-year-old girl's head. His primary argument on appeal is that there is insufficient evidence of felony child abuse (Pen. Code,[1] § 245, subd. (a)(1)) for the second incident because he had no caregiving or similar relationship with the child. He also raises a variety of sentencing issues, many of which are conceded by the Attorney General. We reject Godoy's sufficiency of evidence argument, correct the sentencing errors, and affirm the judgments as modified.[2]

FACTUAL AND PROCEDURAL BACKGROUND

A. Case No. SCD296229

On January 17, 2023, Godoy pled guilty to assault with a deadly weapon (§ 245, subd. (a)(1)) for a September 18, 2022 incident in which he threw a full glass bottle at his roommate's head. On March 27, 2023, the court placed Godoy on formal probation for two years.

In August and October 2023, the court found Godoy in violation of his probation based on the July 2023 rock-throwing incident charged in case No. SCD299560. At sentencing in both cases, the court sentenced Godoy to a three-year prison term for case No. SCD296229, to be served concurrently with the 17-year term imposed in case No. SCD299560.

B. Case No. SCD299560

On July 1, 2023, security officers at Scripps Mercy Hospital escorted Godoy off the hospital property. When they got outside, Godoy threatened to hit the first person he saw with a rock and reached down to grab a rock off the ground. An officer pushed his taser holster forward and said, "Don't do

---

[1]     All subsequent statutory references are to the Penal Code.

[2]     By separate order, we also deny Godoy's pro per petition for writ of habeas corpus in D085157.

2

it." Godoy dropped the rock, but then ran across the street and picked up another rock.

E.M. and her eight-year-old daughter A.M. were on a bike ride in the area. A.M. was wearing a horseback riding helmet and walking her bike across an intersection. Godoy suddenly approached them yelling something and then threw a rock at A.M.'s head. The rock cracked the outside of A.M.'s helmet. A.M. dropped her bike and started screaming and crying. The security officers tackled Godoy and placed him in handcuffs. A.M. suffered no physical injury, but she was emotionally traumatized by the incident.

Police arrived and arrested Godoy. When they placed Godoy in a patrol car, he spit at an officer in the face. The police found the rock in the street near where the attack occurred. It weighed three to five pounds and was about the size of a balled fist or a bit larger.

In a jury trial, the jury found Godoy guilty of felony child abuse against A.M. (§ 273a, subd. (a); count 1), assault with a deadly weapon against A.M. (§ 245, subd. (a)(1); count 2), and misdemeanor battery against a peace officer (§ 243, subd. (b); count 3). The jury also found true allegations that Godoy had previously been convicted of a serious felony and strike prior in case No. SCD296229 (§§ 667, subds. (a)-(i), 1170.12) and that he was on probation in case No. SCD296229 when he committed the crimes.

The court sentenced Godoy to 17 years in state prison for counts one and two and a concurrent sentence of 365 days for count three. The court also issued a criminal protective order naming A.M. as the protected person.

Godoy filed appeals in both cases and we have consolidated the two appeals.

DISCUSSION

I

Godoy first argues that his felony child abuse conviction in case No. SCD299560 must be reversed because there is insufficient evidence he inflicted *unjustifiable* physical pain or mental suffering on A.M. According to Godoy, a defendant may not be found to have inflicted *unjustifiable* physical pain unless he had a caregiving or similar relationship with the child that would have permitted the infliction of *justifiable* physical pain. He asserts that the statute therefore does not apply to "street criminals who perpetrate random assaults" against children. We reject this contention.

Section 273a, subdivision (a) is "an omnibus statute that proscribes essentially four branches of conduct." (*People v. Sargent* (1999) 19 Cal.4th 1206, 1215 (*Sargent*).) The Supreme Court in *People v. Valdez* (2002) 27 Cal.4th 778, 783, identified these four branches by quoting the exact language of the statute and inserting bracketed numbers 1-4 as follows:

> "As relevant here, [section 273a, subdivision (a)] provides: 'Any person who, under circumstances or conditions likely to produce great bodily harm or death, [1] willfully causes of permits any child to suffer, or [2] inflicts thereon unjustifiable physical pain or mental suffering, or [3] having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or [4] willfully causes or permits that child to be placed in a situation where his or her person or health is endangered, shall be punished by imprisonment in a county jail not exceeding one year, or in the state prison for two, four, or six years.' "

California courts have recognized that a violation of this statute "can occur in a wide variety of situations: the definition broadly includes both active and passive conduct, i.e., child abuse by direct assault and child endangering by extreme neglect." (*People v. Smith* (1984) 35 Cal.3d 798,

4

806.) In this case, Godoy's conduct is the second type covered by the statute for direct perpetrators; he was convicted of directly inflicting unjustifiable physical pain or mental suffering on A.M. by throwing the rock at her head. The jury was only instructed on this theory.

Nothing in the plain language of the statute suggests that the second direct infliction theory requires the existence of a caregiving or custodial or any similar relationship between the defendant and the child. Rather, this theory applies to "[a]ny person" who "inflicts" unjustifiable physical pain or mental suffering on a child. (§ 273a, subd. (a).) The broadly inclusive term "any person" cannot be construed to mean only someone with a caregiving or similar relationship with the child. Only the third and fourth forms of liability set forth in the statute require a "care or custody" relationship. When language is included in one portion of a statute and omitted from another, we infer that the omission was purposeful and the Legislature intended a different meaning. (*In re Ethan C.* (2012) 54 Cal.4th 610, 638.) Applying the plain meaning of the statute, therefore, a person who has no caregiving or custodial or similar relationship with the child may be convicted of child abuse under the second direct infliction theory.

Godoy argues that his contrary interpretation is necessary to give effect to the statutory language "inflicts thereon *unjustifiable* physical pain." (§ 273a, subd. (a).) He reasons: "If the infliction of unjustifiable physical pain is illegal, the infliction of justifiable physical pain by the defendant must have been legal." Godoy notes that unlike parents and teachers who may in certain circumstances use justifiable physical force against children, he "had no relationship to the child victim that granted him such privileges, [so] he can not be guilty under section 273a for having abused them."

5

We are not persuaded. Godoy's interpretation is not necessary to give meaning to the word "unjustifiable." As he acknowledges in his reply brief, someone who has no caregiving or similar relationship with a child may cause physical pain to the child justifiably in some circumstances, such as by shaking or slapping a choking child (*Sargent, supra*, 19 Cal.4th at p. 1224) or acting in self-defense or defense of others (§§ 693, 694). Someone could also cause a child to experience mental suffering without doing so unjustifiably. For example, a store owner could cause mental suffering by reprimanding a child for stealing candy or threatening to call the police. By criminalizing only the infliction of "unjustifiable" physical pain or mental suffering, the statute excludes such justifiable conduct from its scope.

Godoy also argues that his position is supported by the decisions in *People v. Heitzman* (1994) 9 Cal.4th 189 (*Heitzman*) and *People v. Flores* (2016) 2 Cal.App.5th 855 (*Flores*). In *Heitzman*, the Supreme Court considered whether the statute criminalizing elder abuse (§ 368, subd. (a)) was unconstitutionally vague as applied to those who are prosecuted for "willfully permitting" an elder to suffer unjustifiable pain or suffering by failing to act to prevent the abuse. (*Heitzman*, at pp. 193–194.) The court noted that the elder abuse statute was modeled on the child abuse statutes (*id.* at p. 203) and its language was derived "verbatim from the felony child abuse statute, section 273a." (*Id.* at pp. 204–205.) The court concluded that, as applied to potential defendants who were charged with failing to act to prevent the abuse (as opposed to perpetrating the abuse), the language of section 368 alone would be void for vagueness because it did not include any limiting principle that the person must have an affirmative duty to act to prevent the harm. (*Id.* at pp. 199–207.) However, the court concluded that the validity of this portion of the statute could be preserved by a clarifying

6

judicial construction limiting its reach to those who have an affirmative duty to exert control over the actor causing or directly inflicting the injury on the victim. (*Id*. at pp. 212–214.)

In *Flores*, the court applied the holding of *Heitzman* to the identical "willfully permits" language of the felony child abuse statute (§ 273a). The court ruled: "[W]e follow our Supreme Court's analysis in *Heitzman* and construe that portion of section 273a, subdivision (a) that imposes criminal penalties on noncaretakers who 'willfully . . . permit[]' the requisite injury to be inflicted on the victim is limited to those who had an affirmative duty, under statutory or common law principles, to exert control over the actor who directly caused or directly inflicted the injury on the victim." (*Flores, supra*, 2 Cal.App.5th at p. 877.)

These cases do not assist Godoy because he was prosecuted for directly inflicting the child abuse himself, not for willfully permitting someone else to inflict it. In other words, he was not convicted of child abuse for failing "to exert control over the actor who caused or directly inflicted the injury on the victim." (*Flores, supra*, 2 Cal.App.5th at p. 877.) Rather, he *was* the actor who directly inflicted the injury. The limiting construction adopted by *Heitzman* and *Flores* applies only to the "willfully permits" theory of elder or child abuse, not the director perpetrator theory. These cases both adopted an "affirmative duty" limitation on the "willfully permits" theory of liability only to save this portion of the statute from being constitutionally vague. Notably, however, Godoy does not and could not argue that the direct perpetrator theory of liability for child abuse would also be constitutionally vague without a similar limiting construction. Thus, these cases do not support Godoy's argument that the direct perpetrator of child abuse must have some caregiving or custodial or similar relationship to the child.

Because Godoy does not otherwise argue there is insufficient evidence that he willfully inflicted unjustifiable physical pain or mental suffering on A.M. by throwing the rock at her head, we find sufficient evidence to support Godoy's conviction for felony child abuse.

## II

Godoy argues that the trial court's imposition of a criminal protective order as to A.M. under section 136.2, subdivision (i) was unauthorized and must be stricken in case No. SCD299560. The Attorney General concedes that the criminal protective order must be stricken because the crimes Godoy was convicted of "are not among the offenses listed in section 136.2, subdivision (i)(1)." We agree with the parties. Godoy's convictions for child abuse (§ 273a, subd. (a)) and assault with a deadly weapon (§ 245, subd. (a)(1)) committed against A.M. are not among the offenses listed in the statute authorizing criminal protective orders. (§ 136.2, subd. (i)(1).) Accordingly, we will strike the protective order.

## III

Godoy contends that the sentence on his conviction for misdemeanor battery on a peace officer (§ 243, subd. (b)) in case No. SCD299560 must be reduced from 365 days to 364 days. The Attorney General concedes that "the maximum term sentence appellant could receive for his battery conviction was 364 days." We agree that the maximum permissible sentence for this crime is 364 days under section 18.5. Accordingly, we will reduce the sentence on the misdemeanor battery count by one day.

## IV

Godoy asserts that the abstract of judgment in case No. SCD299560 should be corrected to reflect the court's oral pronouncement of judgment staying the fines and fees. The Attorney General again concedes the point.

8

We agree that the trial court stayed all the fines and fees based on defense counsel's representation that Godoy was unable to pay them, but the abstract of judgment does not reflect that they were stayed. Accordingly, we will direct that the abstract of judgment be corrected.

V

Finally, Godoy argues that he is entitled to additional presentence credits in case No. SCD296229 relating to his probation violation. The court awarded him credits for 139 actual days served and 138 days for good conduct. The Attorney General concedes that: (1) Godoy is entitled to credits in both the probation case and the subsequent rock-throwing case for the time spent in custody on the rock-throwing incident (*People v. Williams* (1992) 10 Cal.App.4th 827, 833–834); and (2) the probation report used the wrong date of arrest for the rock-throwing incident to calculate the credits for the probation case and Godoy is therefore entitled to additional custody and conduct credits for the 31 days he spent in custody in July 2023.

We agree with the parties on this point. Godoy is entitled to an additional 31 days of presentence credits for the time served in July 2023, for a total of 170 days actual days (§ 2900.5, subd. (a)), plus 170 days of conduct credits (§ 4019 [four days conduct credits for every two days actually served]). We will modify the judgment in case No. SCD296229 accordingly.

Godoy contends he is also entitled to credits for an additional 17 days he served in custody between his release after his plea and his sentencing in case No. SCD296229. The Attorney General responds, "it is unclear what information appellant is relying on to support that assertion as it contains no citation to the record." In reply, Godoy recognizes that his "initial showing was not as clear as it could have been" and attempts "to clarify this."

9

Even with the clarification, however, we see no indication that Godoy is entitled to another 17 days for time served between his plea and his sentencing. Godoy does not dispute that he had served 122 actual days as of his plea on January 17, 2023. On that date, the court released him pending his sentencing, then later issued a bench warrant when he did not appear for sentencing. Godoy appeared and was remanded into custody on March 17, 2023, and he was sentenced 10 days later. At sentencing, the court awarded him credits for 139 actual days served and 138 conduct days. Thus, the court awarded Godoy an additional 17 days worth of credits for the time he served between his plea and his sentencing (139 actual days awarded at sentencing minus the 122 days actually served as of the time of the plea). If anything, however, the record suggests Godoy may have served only 10 days from the time of his plea until sentencing (from March 17 when he was remanded back into custody until March 27 when he was sentenced). In other words, the court may have awarded too many credits for this time period. Because the record is unclear on this point, however, we will indulge the usual presumption that the judgment is correct and leave it undisturbed as to these 17 days of credits.

## DISPOSITION

As to case No. SCD299560, the criminal protective order is stricken, the sentence on count three is reduced from 365 days to 364 days, and the clerk of superior court is directed to correct the abstract of judgment to reflect that the fines and fees were stayed and forward a copy of the corrected abstract to the Department of Corrections and Rehabilitation. As to case No. SCD296229, the judgment is modified to award a total of 170 days actual custody credits plus 170 days conduct credits, and the clerk of superior court is directed to correct the abstract of judgment accordingly and forward a copy

of the corrected abstract to the Department of Corrections and Rehabilitation.  In all other respects, the judgments in both cases are affirmed.

BUCHANAN, J.

WE CONCUR:


McCONNELL, P. J.


RUBIN, J.